IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 11-cv-01233-CMA-BNB

COS CAPITAL PARTNERS I, LLC, and LH CAPITAL PARTNERS, LLC,

     Plaintiffs,

v.

RINEON GROUP, INC.,

     Defendant.

---

## PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT

---

Plaintiffs, COS Capital Partners I, LLC and LH Capital Partners, LLC (collectively, "Capital Partners"), by and through their counsel Rothgerber Johnson & Lyons LLP, move for summary judgment on the single claim for relief set forth in their Complaint.

## <u>INTRODUCTION</u>

This action arises from the breach of a stock purchase contract. Defendant Rineon Group, Inc. ("Rineon") breached its agreement to purchase from Capital Partners a total of 10,000,000 shares of Class A common stock of Fund.com, Inc., for $0.25 per share.

Rineon does not dispute the facts. Rather, it claims the agreements are not enforceable for the reasons stated in the Scheduling Order entered June 28, 2011 [Dkt. #9] at § 3(b) (Statement of Claims and Defenses). As a matter of law, Rineon's theories all fail.

Rineon argues that the Option Agreements are void and unenforceable because the rights under the original agreements were not validly assigned and the option terms were not validly extended.  Rineon misreads the contractual provisions, as the agreements were validly assigned and extended.

Rineon argues next that no payment or valuable consideration was given and so it is not bound by the contract.  That argument, too, is without merit.

Finally, Rineon argues incorrectly that the existence of an unsatisfied judgment against a different defendant for a different breach of contract bars any judgment against Rineon.

<u>STATEMENT OF UNDISPUTED MATERIAL FACTS</u>

The following are undisputed material facts, supported by Exhibits 1-8, attached hereto.

**The Loan and Stock Purchase Agreements**

1.      On July 27, 2009, IP Global Investors LTD ("IPG") and Equities Media Acquisition Corp., Inc. ("EMAC") (collectively, "Lenders") signed a Revolving Credit Loan Agreement ("Loan Agreement") with Fund.com, Inc. ("Borrower").  *See Exhibit 1, Loan Agreement.*  That Loan Agreement also described and incorporated a Stock Purchase, Redemption and Option Agreement ("Stock Purchase Agreement").  *See Exhibit 2, Stock Purchase Agreement.*

2.      The Stock Purchase Agreement was created on August 28, 2009.  The parties to it were IPG, EMAC (the Lenders), Fund.com, Inc. (the Borrower), and Daniel Klaus and Lucas Mann (the Founders).  *See Exhibit 2, Stock Purchase Agreement.*

2

3.      The Lenders were to purchase 1,000,000 shares from each of Klaus and Mann.  The option price was $0.21 a share.  Fund.com, Inc. was to receive the money. *See Exhibit 2, Stock Purchase Agreement, para. 1.*

**The Option Agreement**

4.      On or about January 5, 2010, Rineon entered into a written agreement ("Option Agreement") of that date with Huntley Family Investments, LLC ("Huntley Group") or its designees.  *See Exhibit 3, Option Agreement.*

5.      Before the Option Agreement, EMAC had assigned its purchase option to IPG, and IPG had in turn assigned its purchase options to Recovery Capital, Inc. ("Recovery Capital").  *Exhibit 3, Option Agreement, p. 1.*

6.      In the Option Agreement itself, Recovery Capital assigned its purchase option to Huntley Family Investments, LLC ("Huntley Group") for a particular period. *Exhibit 3, Option Agreement, p. 1, para. 1.*

7.      The Huntley Group, in exchange, gave Recovery Capital a call option of $0.50 a share.  *Exhibit 3, Option Agreement, para. 2.*

8.      In the Option Agreement, the option period was extended to January 31, 2010.  *Exhibit 3, Option Agreement, p. 1, para. 1.*

9.      The Option Agreement also gave the Huntley Group a Put Option.  Under the Put Option, Rineon agreed to purchase the shares owned by Huntley Group for $0.25 a share.  *Exhibit 3, Option Agreement, para. 3.*

10.     The governing law of the Option Agreement was the law of the State of Delaware.  *Exhibit 3, Option Agreement, para. 4.7.*

11.     The Option Agreement was signed by Fund.com, Inc., the Huntley Group, Recovery Capital, and Rineon.  In addition, IPG signified its acceptance of the assignment of the original option.  *Exhibit 3, Option Agreement, Signature Page.*

**The Modified Option Agreement**

12.     The Option Agreement was modified by written agreement dated January 25, 2010, and the Huntley Group exercised its option.  *See Exhibit 4, Modified Option Agreement.*

13.     The Modified Option Agreement was signed by the Huntley Group, Recovery Capital, Rineon, and IPG.  *Exhibit 4, Modified Option Agreement, p. 2.*

**The Call Option Exercised**

14.     On April 15, Recovery Capital exercised its Call Option, agreeing to purchase 10,000,000 shares of Class A common stock of Fund.com, Inc. for $0.50 per share, or a total of $5,000,000.  *See Exhibit 5, April 15 Call Option Letter.*

15.     Recovery Capital did not purchase the shares.  (Rineon's Answer paras. 7-10 denies the allegations of the Complaint paras. 7-10 based on the validity of the document, but does not assert that it purchased the shares.)

16.     Capital Partners obtained a default judgment against Recovery Capital in the amount of $4,860,000, entered by the District Court, El Paso County, Colorado on April 5, 2011 in Case No. 10-CV-3944.

17.     To date, that judgment is wholly unsatisfied, and Plaintiffs have been unable to collect anything.  *See Exhibit 6, Affidavit of Jason Huntley, para. 5.*

**The Put Option Exercised**

18.     The Huntley Group is a managing member of both the Capital Partners corporations.  COS Capital Partners and LH Capital Partners held this stock for the Huntley Group.  *See Exhibit 7, COS Capital Partners Letter September 7, 2010, Exhibit 8, LH Capital Letter September 7, 2010.*

19.     On September 7, 2010, COS Capital Partners exercised its Put Option to sell the shares for $0.25 each.  The letter demanded a total purchase price of $2,261,904.75.  *See Exhibit 7, COS Capital Partners Letter September 7, 2010.*

20.     On September 7, 2010, LH Capital Partners also exercised its Put Option to sell the shares for $0.25 each.  The letter demanded a total purchase price of $238,095.25.  *See Exhibit 8, LH Capital Partners Letter September 7, 2010.*

**Capital Partners's Claims**

21.     Capital Partners claims that Rineon was obligated to purchase shares of Class A common stock of Fund.com, Inc. at $0.25 a share as follows:

        a.     9,047,619 shares from Plaintiff COS Capital Partners I, LLC, for a total purchase price of $2,261,904.75; and

        b.     952,381 shares from Plaintiff LH Capital Partners, LLC, for a total purchase price of $238,095.25.  *See Complaint, para. 8.*

22.     After Rineon failed to purchase the shares, the 10,000,000 shares have undergone a 100-1 reverse split.  Capital Partners now holds 100,000 shares of Class A common stock of Fund.com, Inc.  *See Exhibit 6, Affidavit of Jason Huntley, para. 2.*

23.    This current value of the 100,000 shares of Class A common stock of

Fund.com, Inc. that Capital Partners now holds is no more than $18,000.  *See Exhibit 6,*

*Affidavit of Jason Huntley*, *para. 4.*

## STANDARD OF REVIEW

The purpose of a summary judgment motion under Fed. R. Civ. P. 56 is to

assess whether trial is necessary.  *White v. York Int'l Corp.*, 45 F.3d 357, 360 (10th Cir.

1995).  Summary judgment is appropriate when it is shown "that there is no genuine

issue as to any material fact and that the moving party is entitled to judgment as a

matter of law."  Fed. R. Civ. P. 56(c).  As the Supreme Court has explained the

summary judgment standard:

> [T]he plain language of Rule 56(c) mandates the entry of
> summary judgment, after adequate time for discovery and
> upon motion, against a party who fails to make a showing
> sufficient to establish the existence of an element essential
> to that party's case, and on which that party will bear the
> burden of proof at trial.  In such a situation, there can be "no
> genuine issue as to any material fact," since a complete
> failure of proof concerning an essential element of the non-
> moving party's case necessarily renders all other facts
> immaterial.

*Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986).

The party seeking summary judgment has the initial burden of informing the court

of the basis for the motion and of establishing, based on relevant "portions of 'the

pleadings, depositions, answers to interrogatories, and admissions in the file, together

with affidavits, if any,'" that there is no genuine issue of material fact and that the

moving party is entitled to judgment as a matter of law.  *Celotex*, 477 U.S. at 323.  Once

this initial demonstration under Rule 56(c) is made, the burden of production shifts to

the nonmoving party.  The nonmoving party must "go beyond the pleadings and by [its] own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'"  *Celotex*, 477 U.S. at 324; *see also* Fed. R. Civ. P. 56(e).

In meeting this burden, the nonmoving party "must do more than simply show that there is a metaphysical doubt as to the material facts."  *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).  That party must demonstrate that there is a "genuine issue for trial."  Fed. R. Civ. P. 56(c); *Matsushita*, 475 U.S. at 587.  An action is void of a material issue for trial "[w]here the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party."  *Matsushita*, 475 U.S. at 587.

## ARGUMENT AND AUTHORITIES

Each of Rineon's objections to the validity of the contracts described above fails under ordinary principles of contract construction.  Because the material facts are not disputed, this Court may determine as a matter of law that the Put Option was enforceable.

## Contract construction

This case turns upon contract construction.  The court analyzes a contract under the "elementary canon of contract construction that the intent of the parties must be ascertained from the language of the contract."  *Comet Sys., Inc. v. MIVA, Inc.*, 980 A.2d 1024, 1030 (Del. Ch. 2008) (quoting *In re IAC/Interactive Corp.*, 948 A.2d 471, 494

(Del. Ch. 2008)).  In undertaking this analysis, the court construes a contract as it would be understood by an objective, reasonable third party.  *Id.*

## Governing law

The governing law for these contracts is the law of the state of Delaware.  Under Delaware law, a contractually-designated choice of law provision is honored if it is reasonable in light of the parties' contractual objectives.  *Total Holdings USA, Inc. v. Curran Composites, Inc.*, 999 A.2d 873, 884 (Del. Ch. 2009).

The Loan Agreement provided that the governing law was the laws of the state of Delaware.  *See Exhibit 1, Loan Agreement, p. 29.*  The August 28, 2009 Stock Purchase Agreement—though it incorporated the Loan Agreement—provided that the governing law was the laws of the state of New York.  *Exhibit 2, Stock Purchase Agreement, para. 4(e).*  But the later Option Agreement provided that the governing law was the laws of the state of Delaware.  *See Exhibit 3, Option Agreement para. 4.7.*  To the extent there was any contradiction or inconsistency, the later agreement served as a modification of the choice of law, and Delaware law governs.  Delaware law is a reasonable choice, as the contract law principles that control here are derived from common law and are fairly consistent from state to state.

## Contractual provisions may be validly modified or waived

Contracts are not monuments—they may be modified by agreement or waiver, and their rights may be assigned.

### *Contracts may be modified*

Even if parties agree not to modify contracts, they can change their minds.  It is futile for parties to tie up by contract their freedom of dealing with each other.  *Pepsi-Cola Bottling Co. v. Pepsico, Inc.*, 297 A.2d 28, 32 (Del. 1972).  They can still renounce and amend provisions of a contract, in any way they see fit, in writing or orally.  *Id.*  Subsequent bargains may arise at any time, whether or not contractual provisions preclude certain types of modifications.  *J.A. Moore Constr. Co. v. Sussex Assocs. Ltd. P'ship*, 688 F.Supp. 982, 988 (D. Del. 1988) (relying on *Pepsi-Cola Bottling*, 297 A.2d at 33).

### *Contractual requirements or conditions may also be waived*

Whether allowed by agreement beforehand, or even in spite of it, contractual provisions may be waived.  "Waiver is the voluntary and intentional relinquishment of a known right."  *Aeroglobal Capital Mgmt., LLC v. Cirrus Indus., Inc.*, 871 A.2d 428, 444 (Del. 2005) (quoting *Realty Growth Investors v. Council of Unit Owners*, 453 A.2d 450, 456 (Del. 1982)).  Waiver "implies knowledge of all material facts and an intent to waive, together with a willingness to refrain from enforcing those contractual rights."  *Id.*

## The original agreements were validly assigned

Rights under contracts may be assigned, and both the Loan Agreement and the Stock Purchase Agreement contemplated that the rights might be assigned.  For instance, the Stock Purchase Agreement inured to the benefit of the Parties and their assigns.  *See Exhibit 2, Stock Purchase Agreement, para. 4(l).*

The Loan Agreement stated it could be amended only in writing by the Parties and could not be assigned without prior written consent of the other Parties.  *See Exhibit 1, Loan Agreement, p. 29.*

The Stock Purchase Agreement stated it could be amended only in writing by the Parties or their duly authorized representative.  *See Exhibit 2, Stock Purchase Agreement, para. 4(b).*  It was "not assignable except with the prior written consent of all the parties hereto."  *Exhibit 2, Stock Purchase Agreement, para. 4(c).*

All parties to the original agreements validly consented to the assignment of the option rights to the Huntley Group.  EMAC and IPG assigned their rights to Recovery Capital.  Recovery Capital assigned its rights in turn to the Huntley Group.  The Option Agreement and Modified Option Agreement were signed by Fund.com, Inc., the Huntley Group, Recovery Capital, and Rineon.  Thus, all the original signatories or their assignees, including the Borrower, agreed in writing to the assignment of the contract rights.

Once the contract rights were validly assigned, the assignees had a perfect right to modify the original Agreements, which they did in the two Option Agreements.

Even supposing that the assignment was not carried out according to the strict provisions of the original Agreements, requiring prior written notice, it does not matter. That requirement was itself modified.

If not modified, it was waived.  Because all original parties or their assignees signed the new agreements, the elements of waiver are clearly met.  The parties had knowledge of all material facts and showed an intent to waive that requirement, together

10

with a willingness to refrain from enforcing those contractual rights.  *See Aeroglobal Cap. Mgmt., LLC*, 871 A.2d at 444.  Had it not been so, these sophisticated business entities would not have signed the new contracts that benefited each of them in various ways.

Rineon does not take into account ordinary principles of contract law and its argument that the transfers of rights and duties were unenforceable fails.  Those transfers were valid.

Capital Partners can assert those rights under the contracts.  Because the courts take the position that the assignment of contract rights should be protected, assignees are permitted to sue on contracts.  *Ush Ventures v. Global Telesys. Group, Inc.*, 796 A.2d 7, 16, n. 9 (Del. Super. 2000).  Assignees may enforce contracts in their own names.  *See Hall v. State*, 655 A.2d 827, 831 (Del. Super. 1994).  Here, the two Capital Partners entities, of which the Huntley Group is a managing member, are enforcing the contracts in their names.

**The option period was validly extended**

Similarly, the option period was validly extended.  The parties and their assignees were within their rights to modify the contracts and did so freely.  And because the Borrower and Rineon signed those contracts, they have waived any argument that the option period could not be extended.

**Rineon received sufficient consideration to make its bargain**

Rineon, having bargained by making promises in exchange for Huntley Group's performance, cannot now say there is no consideration.

Consideration must be bargained for. *Barnard v. State*, 642 A.2d 808, 818 (Del. Super. 1992). Consideration is "a benefit to a promisor or a detriment to a promisee pursuant to the promisor's request." *Cont'l Ins. Co. v. Rutledge & Co., Inc.*, 750 A.2d 1219, 1232 (Del. Ch. 2000). "It is well settled that consideration for a contract can consist of either a benefit to the promisor or a detriment to the promisee." *First Mortgage Co. v. Fed. Leasing Corp.*, 456 A.2d 794, 795-96 (Del. 1982). "This is equivalent to saying that if the promisee parts with something at the promisor's request, it is immaterial whether the promisor receives anything, and necessarily involves the conclusion that the consideration given by the promisee for a promise need not move to the promisor, but may move to anyone requested by the offer." *Id.* at 796 (quoting *Williston on Contracts* 3d ed. § 113).

Rineon and Fund.com, Inc. bargained for Huntley Group's performance. Rineon promised to honor the Put Option, and was, therefore, the promisor. Huntley Group was the promisee for this Put Option. Huntley Group's purchase of Fund.com, Inc.'s stock was a detriment to itself pursuant to Rineon's request. Huntley Group thus parted with investment money at Rineon's request and in exchange for its promise. It does not matter whether Rineon itself received anything, and it was perfectly permissible for the consideration to move instead to Fund.com, Inc. at Rineon's request. This contract was supported by adequate consideration.

**The present action is not affected by the previous judgment**

Rineon argues, relying on an outdated nineteenth century doctrine, that Capital Partners cannot maintain this action in light of the judgment it has already obtained

against Recovery Capital.  On the contrary, modern theories of joint and several liability and satisfaction of judgment permit Capital Partners to maintain this second action.

### *Joint and several liability*

In Delaware, an "obligation or written contract of several persons shall be joint and several, unless otherwise expressed."  Del. Code Ann. Tit. 6, § 2701 (2011).

In the nineteenth century, the rule was that a judgment against one joint promisor merged the claim and barred a subsequent action.  *Restatement (Second) of Contracts* § 292, cmt. a (2011).  This rule has been superseded.

Usually, joint and several liability arises when two or more promisors in the same contract promise the same or a different performance.  *FDIC v. First Heights Bank, FSB*, 229 F.3d 528, 542 (6th Cir. 2000).  "A judgment against one person liable for a loss does not terminate a claim that the injured party may have against another person who may be liable therefor."  Restatement (Second) of Judgments § 49 (1982).

A "judgment against one or more promisors does not discharge other promisors of the same performance unless joinder of the other promisors is required. . ."  Restatement (Second) of Contracts § 292(1).  "A judgment in an action brought against A will not bar a subsequent action for the same cause against B if there is no joint relationship between them."  12 *Williston on Contracts* § 36:35 (4th Ed.)  "Since joint and several obligations involve separate obligations on the part of each obligor, a judgment in favor of or against one is no bar to an action against another."  12 *Williston on Contracts* § 36:35 (4th Ed.)  The legal confirmation of one obligation does not limit or extinguish the other.  *Restatement (Second) of Judgments* § 49 (1982) cmt. a.

So the parties may be sued in successive actions.  *See e.g. Chase Bank  v. Acosta*, 880 P.2d 1109, 1115 (Ariz. Ct. App. 1994) (foreclosure actions against partnership and individual partner).  The essence of joint and several liability is that the plaintiff may sue the parties separately or all together.  *See United States v. Manning Coal Corp.*, 977 F.2d 117, 122 (4th Cir. 1992) (action on a contract); *Spath v. Norris*, 281 S.W. 3d 346, 351 (Mo. Ct. App. 2009) (when two defendants are potentially liable for same loss, the claims are separate, and two lawsuits can be filed) (breach of contract action on home damage); *Carter v. Forstrom*, 722 P.2d 23, 25 (Or. Ct. App. 1986) (a judgment against a partner in breach of contract action does not preclude a later judgment against another partner who is jointly and severally liable).

In this case, both Recovery Capital and Rineon made promises under the contract.  Recovery Capital's promise was to honor the Call Option it made.  Rineon's promise was to honor the Put Option.  These defendants are different and their promised performance was different.  While it is possible to argue their performance was completely unrelated, at most they were jointly and severally liable.  As such, they could be sued successively.

### *Double recovery, single satisfaction*

"Multiple liability and duplication of damages are distinct concepts.  The rule against double recovery prevents a plaintiff from recovering the same compensatory damages twice, but does not prevent multiple parties from being found liable." *Pedroza v. Lomas Auto Mall, Inc.*, 663 F.Supp. 2d 1123, 1137 (D. N.M. 2009).

There can be no double recovery when there has been no single recovery. *AT&T Corp. v. Clarendon Am. Ins. Co.*, 931 A.2d 409, 419, n. 24 (Del. 2007) (commenting in passing that there would be no double recovery or windfall where a party had yet to receive a single recovery); *see Rocky Mountain Gen. v. Simon*, 827 P.2d 629, 632 (Colo. Ct. App. 1992) (commenting, in the insurance context, that if a claimant cannot enforce a judgment or settlement agreement, there is no double recovery).

Any danger of double recovery is "foreclosed by the rule that only one satisfaction may be obtained for a loss that is the subject of two or more judgments." Restatement (Second) of Judgments § 49 (1982) cmt. a.  The "one satisfaction" rule can apply both when defendants commit the same acts and when they commit technically different acts that result in a single injury.  Either way, the plaintiff cannot recover the same damages twice.  *Navigant Consulting, Inc. v. Wilkinson*, 508 F.3d 277, 300 (5th Cir. 2007); *see E.A. Prince & Son, Inc. v. Selective Ins. Co.*, 818 F.Supp. 910, 917 (D. S.C. 1993) (plaintiff may prosecute separate actions and a second judgment is not barred until there has been a full satisfaction received, because otherwise the plaintiff might never receive the damages); *Mitchell v. Edge*, 598 So.2d 125, 128 (Fla. Dist. Ct. App 1992) (adopting the reasoning of § 49 that the legal confirmation of one obligation does not extinguish the other, but the plaintiff may receive only one satisfaction for a loss that is the basis of two or more judgments).

Here, Capital Partners obtained a default judgment against Recovery Capital for failing to honor its Call Option.  The judgment has not been satisfied and may be

impossible to collect.  Capital Partners is free to sue Rineon.  To the extent the

damages overlap, Capital Partners may have one judgment satisfied.  To the extent the

damages are separate, which they will be, in part because the contracted performance

was different, Capital Partners could collect portions of the judgment from both

promisors.  Either way, the suit is not barred.

### CONCLUSION

Capital Partners requests this Court to enter summary judgment holding that the

Option Agreements were valid and that Rineon is in breach of its contractual obligation

to honor the Put Option.  Judgment should against Rineon and in favor of Capital

Partners as follows:

A.      For Plaintiff COS Capital Partners I, LLC in the amount of $2,245,619.07,

representing the price for which Rineon is obligated to purchase said Plaintiff's

Fund.com, Inc. shares ($2,261,904.75), less the current value of those shares as set

forth in *Exhibit 6, Affidavit of Jason Huntley*, *para. 4(a)* ($16,285.68).

B.      For Plaintiff LH Capital Partners, LLC in the amount of $236,381.11,

representing the price for which Rineon is obligated to purchase said Plaintiff's

Fund.com, Inc. shares ($238,095.25), less the current value of those shares as set forth

in *Exhibit 6, Affidavit of Jason Huntley*, *para. 4(b)* ($1,714.14).

DATED this 31st day of August, 2011.

Respectfully submitted,

*/s/ Theresa Lynn Sidebotham*
Edward A. Gleason
Theresa Lynn Sidebotham
Rothgerber Johnson & Lyons LLP
90 South Cascade Avenue, Suite 1100
Colorado Springs, CO  80903
Telephone:  (719) 386-3000
Facsimile:   (719) 386-3070
egleason@rothgerber.com
tsidebotham@rothgerber.com
*Attorneys for Plaintiffs*

## CERTIFICATE OF SERVICE

I certify that on the 31st day of August, 2011, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which will send notification of such filing to:

James F. Monagle, Esq.
Murphy, Pearson, Bradley & Feeney
88 Kearny Street, 10th Floor
San Francisco, CA 94108-5530
*jmonagle@mpbf.com*

*/s/ Theresa Lynn Sidebotham*
Theresa Lynn Sidebotham

17